UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN C. COURTNEY, PSY.D, MP        CIVIL ACTION

VERSUS                              NO. 12-655

DR. BARTHOLOMEW VEREB AND ANGIE'S LIST,   SECTION: A(4)
INC.

### ORDER AND REASONS

Before the Court is a **Motion to Dismiss (Rec. Doc. 8)** filed by Defendant Angie's List, Inc. pursuant to Fed. R. Civ. Proc. 12(b)(6), arguing that Plaintiff's claims are barred by the 1996 Communications Decency Act, 47 U.S.C. § 230 ("CDA"). Plaintiff Dr. John C. Courtney opposes the motion **(Rec. Doc. 12)**. The motion, set for hearing on May 23, 2012, is before the Court on the briefs without oral argument. For the following reasons, the motion is **GRANTED**.

### I.    BACKGROUND

This case stems from allegedly defamatory comments which Plaintiff Dr. John Courtney contends that Defendant Dr. Bartholomew Vereb made about him on a web page owned by Defendant Angie's List, Inc. Angie's List[1] describes itself as "an online community for members to find service companies and health care professionals in markets across the country. Members share their experiences about businesses/ professionals from over 500 service categories, including doctors, carpet cleaners, handymen, landscapers, and caterers." See Rec. Doc. 8, p. 1. Angie's List advertises that it certifies its data before disseminating its reports to the public. It states on its website: "Before they're posted, all reviews are checked in order to guard against providers and companies that try to

---

[1]   http://www.angieslist.com.

1

report on them or their competitors."[2]

Plaintiff alleges that, on June 2, 2009, Dr. Vereb "intentionally and maliciously, posted false and defamatory comments" about Dr. Courtney's professional services. See Plaintiff's Complaint at ¶¶ 10 and 19. According to the complaint, Dr. Vereb is a licensed physician, practicing psychiatry in Bradenton, Florida. He is also simultaneously licensed as a physician in Louisiana with a defined practice in psychiatry. Plaintiff states that, contrary to Dr. Vereb's negative comments, Dr. Courtney had never met nor treated Dr. Vereb or anyone in Dr. Vereb's family.

Plaintiff purportedly became aware of the negative postings in "late December of 2011." Id. at ¶ 8. According to Plaintiff, he immediately contacted Angie's List via its online internal complaint form to request that it not disseminate Dr. Vereb's comments; however, Plaintiff received no response from Angie's List. Dr. Courtney alleges that he repeatedly advised Angie's List that the contents of the report were false and requested their removal over the course of several months. Plaintiff asserts that Angie's List eventually responded and recommended that Dr. Courtney post a response to Dr. Vereb's comments, which he did. Plaintiff continued to request the removal of the comments, however.

Plaintiff states that, on February 8, 2012, he received an e-mail from an Angie's List representative stating that Angie's List had removed Dr. Vereb's comments because it had discovered that Dr. Vereb operates in the same field as Dr. Courtney and Angie's List does not allow businesses to report on themselves or competitors.

Dr. Courtney subsequently filed suit against both Angie's List and Dr. Vereb in federal court. It is undisputed that this Court has subject matter jurisdiction over the instant matter pursuant to 28

---

[2] See http://www.angieslist.com/howitworks.aspx.

U.S.C. § 1332 in that the claims asserted are against defendants with citizenship other than that of the plaintiff and because the amount in controversy exceeds $75,000.000, exclusive of interests and costs.

Plaintiff's stated cause of action against Angie's List is that Angie's List, as "marketer, publisher, distributor and/or seller" of the information posted online, "owed a duty to the Plaintiff to certify its data and to verify the contents of any negative posting that purports to be factual statements." Id. at ¶¶ 28-29. Dr. Courtney alleges that Angie's List was negligent in failing to verify the truth of Dr. Vereb's reviews, which is "contrary to their own stated policy of certifying data." Id. at ¶ 31. According to Dr. Courtney, "Angie's List's publication of the defamatory comments to third parties was malicious since it knew or should have known that the comments were false." Id. at ¶ 34. Dr. Courtney has requested a trial by jury, and seeks compensatory damages for past and future mental pain and suffering, past and future economic loss, past and future loss of earning capacity, as well as all general, special, incidental and consequential damages as may be proven at the time of trial. Id. at ¶ 35.

Angie's List brings this Motion to Dismiss **(Rec. Doc. 8)** based on the argument that Plaintiff's claims against it are precluded by the 1996 Communications Decency Act, 47 U.S.C. §230 ("CDA"). Having considered the record, the memoranda of counsel and the law, the Court has determined that dismissal is appropriate for the following reasons.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) authorizes a dismissal of a complaint for "failure to state a claim upon which relief can be granted." A 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Before dismissal is granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. Capital Parks,

Inc. v. Southeastern Advertising and Sales Sys., Inc., 30 F.3d 627, 629 (5th Cir. 1994). A court need not, however, accept as true allegations that are conclusory in nature. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).

**III.   LAW & ANALYSIS**

   A.   The Purpose and History of the CDA

To determine if Angie's List is immune from the claims brought against it by Plaintiff based on the provisions of the CDA, it is helpful to understand the rationale for the statute. By passing the CDA, Congress recognized the ever increasing role that the internet plays in worldwide communication. See Smith v. Intercosmos Media Group, Inc., 2002 WL 31844907 at *2 (E.D.La., Dec. 17, 2002). Congress pointed to "the availability of educational and informational resources to our citizens" that the internet provides. Id. (quoting 47 U.S.C. § 230). It also hailed the internet as "a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity" Id.

Congress saw the burgeoning internet as a benefit to all Americans. It also recognized that one reason the internet played such a beneficial role in American society was that the internet flourished "with a minimum of government regulation." Id. With the CDA, Congress made it an official policy of the United States "to promote the continued development of the internet and other interactive media, unfettered by federal or state regulation." Id. Clearly, the purpose of the CDA is to promote the free flow of information on the internet.

To ensure that web site operators and other interactive computer services would not be crippled by lawsuits arising out of third-party communications, the Act provides interactive computer services with immunity. Doe v. MySpace, Inc., 474 F.Supp.2d 843, 847 (W.D.Tex. 2007) (citing Dimeo v. Max, 433 F.Supp.2d 523, 528 (E.D.Pa. 2006) (internal citations and quotations omitted)). Congress

provided immunity to "interactive computer service" providers for statements created by third parties but disseminated, and thus, published, by internet services. Unlike newspapers, radio stations, and other traditional media, under the CDA, websites may not be held liable for defamatory statements posted or sent through their services. R.L. Lackner, Inc. v. Sanchez, 2005 WL 3359356 at *2 (S.D.Tex., Dec. 9, 2005)(citing Blumenthal v. Drudge, 992 F.Supp. 44, 49 (D.D.C.1998)). However, individuals who create defamatory statements may be held liable even if the offending comments are published by posting on the internet. Id.

The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). The statute identifies an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). The CDA immunizes providers and users of "interactive computer services" from liability for the information provided by a third party "information content provider." 47 U.S.C. § 230(1).

One of the most important and oft-cited cases on CDA immunity to date is Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997). In Zeran, the victim of a vicious prank sued America Online, Inc. ("AOL") for failing to remove a false advertisement offering t-shirts featuring tasteless slogans related to the 1995 Oklahoma City bombing and instructing interested buyers to call the plaintiff to place an order. Zeran, 129 F.3d at 329. After receiving death threats from people who were outraged by the ad, Zeran learned of the prank and demanded that AOL remove the ad from its bulletin board and post a retraction. Id. AOL failed to remove the original ad, and the unidentified poster also posted several more ads listing the plaintiff's phone number. Id. A local radio station

learned of the ads and encouraged its listeners to harass Zeran.  Id.  The volume and intensity of the threats became so severe that local police guarded Zeran's home to protect his safety.  Id.

Zeran sued AOL for negligence because it failed to remove the ad after specific notice of its falsity and allowed the third party to post additional ads after Zeran had put AOL on notice of his harassment and bodily danger.  The Fourth Circuit affirmed the dismissal of the claims on the pleadings, explaining that the CDA necessarily protects interactive computer services from liability even after they are notified of an allegedly defamatory or threatening post because the insupportable legal burden imposed by potential tort liability would undermine the CDA's goal of promoting speech on the Internet.  Id. at 330.  The Court explained that "[b]y its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."  Id.  In enacting the CDA, "Congress made a policy choice ... not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." Id. at 330-31.

Three other federal courts of appeals have also held that the CDA immunizes computer service providers from liability for information that originates with third parties.  Doe v. Bates, 2006 WL 3813758 at *12 (E.D.Tex., Dec. 27, 2006)(citing Carafano v. Metrosplash.com Inc., 339 F.3d 1119, 1123 (9th Cir. 2003)(noting that the Ninth Circuit in Batzel v. Smith, 333 F.3d 1018 (9th Cir. 2003) had "joined the consensus developing across other courts of appeals that § 230(c) provides broad immunity for publishing content provided primarily by third parties"); Green v. America Online, 318 F.3d 465, 471 (3d Cir. 2003)(upholding immunity for the transmission of defamatory messages and a program designed to disrupt the recipient's computer); Ben Ezra, Weinstein, & Co. v. America Online, Inc., 206 F.3d 980, 985-86 (10th Cir. 2000)(upholding immunity for the on-line provision of stock information even though AOL communicated frequently with the stock quote providers and had

occasionally deleted stock symbols and other information from its database in an effort to correct errors)).

   B. <u>Defendant May Claim Immunity Under the CDA</u>

  The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In <u>Smith v. Intercosmos Media Group, Inc</u>., 2002 WL 31844907 (E.D.La., Dec. 17, 2002), a court of this district employed a three-part test to determine whether a defendant could properly claim immunity under the CDA. Judge Berrigan held that, for purposes of CDA immunity: 1) the party claiming the immunity must be a provider or user of an interactive computer service; 2) the alleged defamatory statement must be made by a third party; 3) the defamation claim the party seeks immunity from must treat the interactive computer service as the publisher or speaker of the alleged defamatory statement. <u>Smith,</u> 2002 WL 31844907 at *2.

  Here, Plaintiff seeks to impose tort liability on a company that functions as an intermediary by providing a forum for the exchange of information between third party users. See <u>Doe v. Myspace</u>, 474 F.Supp. 2d at 848. In his opposition, Plaintiff contends that Angie's List cannot be granted immunity under the CDA because it is not merely just an "interactive computer service," but also provides copies of posted reviews to consumers upon request by telephone and fax. According to Plaintiff, Angie's List also operates as an "information content provider" because it requests that individuals, as part of their report generation process, respond to standard queries and provide additional content about the professional against whom they are reporting. In applying the three-part test to the facts of the instant case, the Court finds that Defendant Angie's List is entitled to CDA immunity for the following reasons.

     1. <u>Angie's List is an Interactive Computer Service</u>

As stated *supra*, the CDA defines an interactive computer service as "any information service, system, or access software that provides access to the internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). The term "interactive computer service" differs from "information content provider," which means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). " Defendant Angie's List argues that it qualifies as an "interactive computer service" and thus meets the first prong of the test.

Plaintiff does not dispute that Angie's List offers an interactive exchange of information, but points out that members may be provided information on a service provider *by phone or fax*, as well as via the internet. According to Plaintiff, because Angie's List offers information by means other than online, it cannot claim the immunity protection of the CDA afforded to traditional interactive computer services. This argument is creative, but unsupported by the case law; Plaintiff did not provide, and the Court has been unable to locate, cases in which a website which offers users the option of receiving hard copies of online information via telephone or fax was deemed to be "not merely just an 'interactive computer service.'" See Rec. Doc. 12, p. 5. The Court finds that excluding websites which offer this type of additional service from the protection of the CDA would be contrary to the policy behind the statute, which was "to promote the continued development of the internet" by allowing it to expand "unfettered by federal or state regulation." 47 U.S.C. § 230.

2. <u>Statements Were Made by a Third Party</u>

Plaintiff readily admits that the allegedly defamatory statements were made by a third party, Defendant Dr. Vereb. Plaintiff's complaint states that the subject comments were "posted by Dr. Vereb," and that "Dr. Vereb intentionally and maliciously posted false and defamatory comments

8

concerning Plaintiff onto a national website to be viewed by all." Plaintiff Complaint, ¶¶ 10, 19.

However, Plaintiff also argues that Angie's List operates as an information content provider. Plaintiff asserts that "through its services, Angie's List requests that individuals, as part of their report generation process, provide additional content about the professional against whom they are report," and that they are therefore responsible for the allegedly defamatory content of Dr. Vereb's postings. Plaintiff Opposition, p. 7. Therefore, although Plaintiff admits that Angie's List is not solely responsible for creating the content complained of, Plaintiff argues that Angie's List is responsible, in part, for the "development of the content provided." Id.

However, Plaintiff fails to provide, and the Court has been unable to locate, binding case law establishing that a website's use of a questionnaire renders it a "content provider" of information provided in response to same. The allegedly defamatory statements objected to by Plaintiff were admittedly authored by Defendant Dr. Vereb; the Court finds no authority for Plaintiff's argument that Defendant Angie's List can be held liable for these statements in spite of the protective provisions of the CDA.

### 3. The Complaint Treats the Defendant as the Publisher of the Alleged Defamatory Statements

For CDA immunity from state and federal claims, the defendant must be treated as the publisher of the alleged defamatory statements. Plaintiff's complaint specifically alleges that Angie's List is the "publisher...of information to the general public searching for qualified medical services." Plaintiff Complaint ¶ 28. Therefore, the third part of the test is satisfied.

### IV. CONCLUSION

The Court finds that Defendant Angie's List meets the three requirements for asserting CDA immunity against the claims brought against it by Plaintiff. First, the defendant qualifies as an

interactive service provider. Second, the defendant is not the source of the alleged defamatory statements. Third, the claim against the defendant treats the defendant as publisher of the alleged defamatory statements.

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 8)** filed by Defendant Angie's List, Inc. is hereby **GRANTED**. Plaintiff's claims against Angie's List are dismissed with prejudice.

New Orleans, Louisiana, this 21st day of June, 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE